IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**HOLLY R. HARPER,**

    **Plaintiff,**

v.                                                        Case No.: 3:24-cv-00113

**MAGISTRATE AND CIRCUIT COURTS
OF CABELL COUNTY, et. al.,**

    **Defendants.**

## PROPOSED FINDINGS AND RECOMMENDATIONS

Plaintiff, proceeding *pro* se, filed a Complaint against Defendants under 42 U.S.C. § 1983 and an Application to Proceed Without Prepayment of Fees and Costs. (ECF Nos. 1, 3). This case is assigned to the Honorable Robert C. Chambers, United States District Judge, and by standing order was referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Currently pending is an initial screening of Plaintiff's complaint and review of her *in forma pauperis* application. For the following reasons, the undersigned **DENIES** the Application to Proceed Without Prepayment of Fees and Costs, as moot, (ECF No. 3), and respectfully **RECOMMENDS** that the presiding District Judge **DISMISS** this case and **REMOVE** it from the docket of the Court.

**I.**  **Relevant History**

Plaintiff, Holly Harper, initiated this lawsuit on March 8, 2024. (ECF No. 1).

Harper named as Defendants the Magistrate and Circuit Courts of Cabell County, Magistrate Dan Ferguson, Circuit Judge Alfred Ferguson, Circuit Clerk J. E. Hood, the Huntington Police Department, the Western Regional Jail, and Andrea McMullen, a licensed counselor at the Prestera Center in Huntington, West Virginia. Harper alleges that Defendants violated her constitutional rights by arresting her, holding her in jail on misdemeanor criminal charges, and facilitating her involuntary commitment to a mental health facility. (ECF No. 1 at 4).

Harper alleges that she was arrested on January 3, 2020, after an anonymous 9-1-1 caller reported a suspicious person and possible break-in near the A.L.C. Church in Huntington. (ECF No. 1 at 7). She asserts that the officers failed to inform her of her *Miranda* rights and referred to her "with an inappropriate four-letter word." (*Id.*). Harper asserts that she was taken to the Cabell County Courthouse, where the county magistrate, Dan Ferguson, ordered that Harper be jailed, again without informing her of her rights. Harper signed a document stating that she did not agree with the charges and was thereafter transported to the Western Regional Jail, where she remained for the next three days. (*Id.*). The Jail "refused to inform [her] of [her] bail/bond." (*Id.*). Harper called her father to have him request the bond amount. (*Id.* at 5). However, the Circuit Judge, Alfred Ferguson, and Circuit Clerk, J. E. Hood, allowed her father to apply for Harper's involuntary commitment, "under false and implied circumstances, including [her] incarcerated status." (*Id.* at 5). Harper alleges that the Circuit Judge and Circuit Clerk "did not follow protocol regarding jail release and posted bail/bond" and that they "did not follow protocol for the involuntary hospitalization per forms used for persons who are not incarcerated." (*Id.*).

Harper was moved to the Prestera Center, where a counselor asked her questions

"that had zero relevance to [her] arrest, including a vehicle and a loaded gun." (*Id.*). Harper was then committed to River Park Hospital, and her name and information was added to the state's mental health registry. (*Id.*). Harper alleges that Defendants violated her Second Amendment right to bear arms; her Fifth Amendment right to due process; her Sixth Amendment rights to confront witnesses against her and to have a trial by jury and the assistance of counsel; her Eighth Amendment rights against excessive bail and cruel and unusual punishment; and her Fourteenth Amendment right to equal protection of the laws. (*Id.* at 4). Harper states in her complaint that her involuntary hospitalization has prevented her from working for the past four years. (*Id.* at 8). She seeks compensatory relief for her lost wages, which she estimates to be more than $400,000. (*Id.* at 8).[1]

Court records from the Magistrate Court of Cabell County[2] confirm that Harper was arrested on January 3, 2020. At 8:51 p.m. that night, officers were dispatched for a suspicious person reported at 350 Staunton St., Huntington West Virginia. *West Virginia v. Harper,* Case No. 20-M06M-00038 (Mag. Ct. Cab. Cty. Jan. 3, 2020). Upon arrival, officers observed Harper yelling in a parking lot, concerning nearby residents. *Id.* Harper appeared to be intoxicated. Officers repeatedly asked Harper to lower her voice and go inside with her friend, but Harper refused and began yelling at a passing vehicle. Harper was taken into custody, and, once at the police station, she refused to be processed. *Id.*

---

[1] On her complaint form, Harper checked the boxes indicating she wished to sue each defendant in his or her official capacity. (ECF No. 1 at 2–3). However, Harper only requests relief in the form of compensatory damages, which are unavailable in official capacity suits due to Eleventh Amendment sovereign immunity. *See Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995); *Nelson v. Strawn*, No. 95–7444, 1996 WL 84447, at *2 (4th Cir., Feb. 28, 1996) (concluding review of the complaint was necessary even if plaintiff had expressly stated his claims were only against the defendants as officials because the body of the complaint revealed the contrary). Therefore, the undersigned will construe Harper's complaint as asserting personal capacity claims against the named individual Defendants.

[2] A court may take judicial notice of public records, such as court filings. *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

Harper was charged with three misdemeanor offenses: disorderly conduct, public intoxication, and failure to process. *Harper,* Case No. 20-M06M-00038. The magistrate set Harper's bail at $10,100, but Harper refused to sign the initial appearance form beyond the first page and wrote that she did not agree with the charges. Harper was appointed a public defender in her case, and the charges were ultimately dismissed on June 17, 2020, after Harper completed 20 hours of community service. *Id.*

## II. Standard of Review

Pursuant to the provisions of 28 U.S.C. § 1915(e)(2), the court must screen each case in which an individual seeks to proceed *in forma pauperis* (without prepayment of fees and costs). The court must dismiss the case, or any part of it, if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915.

A "frivolous" case has been defined as one which lacks "an arguable basis either in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A case lacks an arguable basis in law when it relies upon an indisputably meritless legal theory, *Denton v. Hernandez*, 504 U.S. 25, 31-32 (1992); *Anders v. California*, 386 U.S. 738, 744 (1967). A case lacks an arguable basis in fact when the supporting allegations describe "fantastic or delusional scenarios." *Neitzke*, 490 U.S. at 328. Similarly, a complaint fails to state a compensable claim when, upon viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

The court is required to liberally construe *pro se* complaints, such as the one filed in this civil action. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, even under this

4

less stringent standard, the complaint still must contain sufficient factual allegations to support a valid legal cause of action. The court may not rewrite the pleading to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), develop the plaintiff's legal theories for him, *Small v. Endicott*, 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III.   Discussion

#### A. Statute of Limitations

Harper filed this suit under 42 U.S.C. § 1983, which provides redress for plaintiffs whose constitutional or civil rights have been violated by persons acting under color of state law. A plaintiff must file a § 1983 action within the prescribed time period. Section 1983 borrows the statute of limitations and tolling rules from the forum state. *Board of See Regents v. Tomanio*, 446 U.S. 478, 484–486 (1980). Although the court applies the state statute of limitations, the accrual date of a § 1983 cause of action is a question of federal law. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). The United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") has stated that the date of accrual is when the plaintiff "knew or had reason to know of the alleged injury." *Ocean Acrs Ltd. Partnership v. Dare Cnty. Bd. of Health*, 707 F.2d 103, 107 (4th Cir. 1985) (citing *Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1971)). Because the statute of limitations is an affirmative defense, the Court may only consider that defense *sua sponte* at the initial screening stage under § 1915 and may only dismiss the case on that basis if it appears on the face of the complaint that the action is time-barred. *See Nasim v. Warden*, 64 F.3d 951, 955 (4th Cir. 1995) (affirming district court's dismissal of complaint on § 1915 review where it appeared on the face of the complaint that plaintiff's suit was untimely); *Eriline*

*Co. S.A. v. Johnson*, 440 F.3d 648, 656–57 (4th Cir. 2006) (confirming that the screening authority under § 1915 "differentiates in forma pauperis suits from ordinary civil suits and justifies an exception to the general rule that a statute of limitations defense should not be raised and considered *sua sponte*.").

For § 1983 claims raised in West Virginia, the applicable statute of limitations is the state's general personal injury statute—two years. *Braxton v. Joynes*, No. CIV.A.5:04 0894, 2005 WL 2249865, at *2 (S.D.W. Va. Sept. 15, 2005). As Harper herself acknowledges, it has been more than four years since the events in her complaint transpired. (*See* ECF No. 1 at 8). Harper was aware of her injuries, and her claims accrued, in January 2020, when she was arrested and involuntarily committed. Harper had until January 2022 to file suit, and she failed to do so. Therefore, Harper's suit is time-barred. Harper's involuntary commitment raises a question of whether the statute of limitations was tolled under West Virginia Code § 55-2-15(b), which provides that the statute of limitations for personal actions is tolled if the plaintiff is insane at the time the action accrues or shortly thereafter. However, Harper asserts her sanity in her complaint, stating that she "was and [is] mentally stable and capable of acting in [her] own best interests as an adult." (ECF No. 1 at 8). Thus, Harper has foreclosed any argument that the statute of limitations was tolled by insanity.[3] It appears on the face of the complaint that Harper's action is time-barred, and the undersigned **FINDS** this action should be dismissed as untimely. Because Harper's action can also be dismissed on the merits, the undersigned

---

[3] Further, Harper's involuntary commitment would not by itself establish that Harper was insane within the meaning of the tolling statute. *See O'Neil v. United States*, No. CIV.A. 5:07-0358, 2011 WL 4597362, at *9 (S.D.W. Va., Aug. 2, 2011) (explaining that a person is insane within the meaning of § 55-2-15 if they have "significantly impaired capacity to maintain acceptable levels of functioning in the area of intellect, emotion, and physical well-being."); *Est. of Dearing v. Dearing*, 646 F. Supp. 903, 910 (S.D.W. Va. 1986) (stating that a finding of incompetency did not amount to a finding of insanity that would toll the statute of limitations).

will address the substance of Harper's complaint as well.

### B. Merits

#### 1. Judicial Immunity

Harper's claims against Magistrate Dan Ferguson, Circuit Judge Alfred Ferguson, and Circuit Clerk J. E. Hood must be dismissed, as these defendants are entitled to judicial immunity. As the United States Supreme Court explained in *Mireles v. Waco*, judges possess an absolute immunity from lawsuits seeking damages. 502 U.S. 9, 11 (1991). This common law immunity not only protects judges from the ultimate assessment of damages, but entirely precludes the lawsuit. *Id.* Judicial immunity is broad, insulating judicial officers from suit even where the plaintiff alleges bad faith, malice, or corruption, *King v. Myers*, 973 F.2d 354, 356 (4th Cir. 1992). The doctrine exists because judges "must be able to exercise discretion vigorously and effectively, without apprehension that they will be subjected to burdensome and vexatious litigation." *McCray v. State of Md.*, 456 F.2d 1, 3 (4th Cir. 1972). Judicial immunity also extends to magistrates, who serve as judicial officers. *King*, 973 F.2d at 356.

Judicial immunity is only overcome where the challenged actions (1) were nonjudicial, or (2) lacked all jurisdiction. *Mireles*, 502 U.S. at 11–12. In determining whether a challenged act was judicial, courts consider the general nature and function of the act, whether it is normally performed by a judge, and whether the plaintiff dealt with the judge in his or her judicial capacity. *Id.* at 12–13. Harper alleges that Magistrate Ferguson ordered her detained without informing her of her rights or her bail and that Judge Ferguson failed to follow appropriate procedures regarding release from jail and involuntary hospitalization, permitting her father to apply for involuntary hospitalization under "false and implied" circumstances. (ECF No. 1 at 5, 7). These allegations clearly

7

encompass judicial actions, as they concern Harper's initial appearance and involuntary commitment—proceedings which are routinely governed by judicial officers.[4]

To abridge judicial immunity for an act that is judicial in nature, a plaintiff must show that the judge acted in the "clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 357 (1978). Jurisdiction is broadly construed. *Id.* Magistrate Ferguson had jurisdiction over Harper's initial appearance, as Rule 5 of West Virginia's Rules of Criminal Procedure for Magistrate Courts provides that initial appearances and arraignments are conducted "by a magistrate of the county of the charging jurisdiction." W. Va. R. Crim. P. for Magist. Ct. 5(b). West Virginia circuit courts are courts of general jurisdiction, *see* W. Va. Code § 51-2-2; *Allstate Ins. Co. v. W. Virginia State Bar*, 233 F.3d 813, 815 n.1 (4th Cir. 2000) ("A West Virginia circuit court is a court of general jurisdiction."), and circuit judges have jurisdiction over involuntary commitment proceedings concerning individuals who reside in or were found in the county in which that court sits. W. Va. Code §§ 27-5-2, 25-5-4. Although Harper alleges some defect in the proceedings, she does not clearly articulate what the defect was, (*See* ECF No. 1 at 5) ("They also did not follow protocol for the involuntary hospitalization per forms used for persons who are not incarcerated."), and even "grave procedural errors" do not abridge judicial immunity. *See Sparkman*, 435 U.S. at 359. Neither the county magistrate nor the circuit judge's actions were taken 'in the complete absence of all jurisdiction.' Harper has not established either of the two narrow exceptions to judicial immunity. Therefore, the

---

[4] The undersigned notes that Harper's allegations against Magistrate Ferguson are plainly contradicted by the court record. At her initial appearance, Harper was provided a statement of her rights, which included her bail amount of $10,100. Harper signed the first page of the three-page document, writing underneath her signature, "I don't agree w/ charges." Harper did not sign the second or third page, which set out her bail and additional rights. However, Magistrate Ferguson signed the third page, attesting that he "informed the defendant of the matters set out above," and he initialed the line certifying that "the defendant refused to initial and/or sign this document at the appropriate places."

undersigned **FINDS** that Magistrate Dan Ferguson and Judge Alfred Ferguson are entitled to judicial immunity from suit and should be dismissed on that ground as well.

Following from Judge Ferguson's judicial immunity, the Circuit Court Clerk, J. E. Hood, is also immune from suit. Court clerks enjoy derivative absolute judicial immunity when they act in obedience to a judicial order or under the court's direction. *Hamilton v. Murray*, 648 F. App'x 344, 345 (4th Cir. 2016); *see McCray v. Maryland*, 456 F.2d 1, 5 n.11 (4th Cir.1972) ("Since judges are immune from suit for their decisions, it would be manifestly unfair to hold liable the ministerial officers who merely carry out that judicial will."). In Harper's case, all of her allegations against Hood reflect Hood's compliance with Judge Ferguson's orders. She alleges that both Judge Ferguson and Hood allowed Harper's father to apply for involuntary commitment under "false and implied circumstances," failed to follow protocol regarding bail and release, and failed to follow protocol for involuntary hospitalizations. These clearly represent decisions made by Judge Ferguson, which Hood carried out as court clerk. Because Judge Ferguson is immune for making those decisions, the undersigned **FINDS** that Hood is likewise immune for acting under Judge Ferguson's direction. Therefore, Harper's claims against Defendant Hood must be dismissed.

### 2. Claims Against Huntington Police Department

Harper's claims against the Huntington Police Department ("HPD") also must be dismissed. Harper makes no allegations against the HPD itself. Rather, she makes allegations against the HPD officers who arrested her on January 3, 2020. *Respondeat superior*, the theory of liability under which an employer is liable for the acts of an employee done in the course of business, does not apply to § 1983 lawsuits. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). A local government

9

will only be liable for the actions of its employee where the employee was acting pursuant to the government's policy or custom. *Id.* To hold the HPD liable for the actions of its officers, Harper would need to allege that the officers violated her constitutional rights while acting pursuant to a policy or custom of the HPD. Harper has not established either—that the officers violated her constitutional rights, or that they acted pursuant to a policy or custom of the HPD.

Harper alleges that HPD officers failed to inform her of her *Miranda* rights and used explicit language while arresting her. Assuming Harper is correct that she was not read her *Miranda* rights, that allegation does not support a claim for damages under § 1983. First, Harper has not established a violation of any constitutional right. *Miranda* warnings exist to protect the individual's Fifth Amendment right against self-incrimination. The constitutional violation occurs not when a defendant is arrested without *Miranda* warnings, but when that defendant's un-*Mirandized* statements are used against her at trial. *See Chavez v. Martinez*, 538 U.S. 760, 767 (2003) ("Statements compelled by police interrogations of course may not be used against a defendant at trial, but it is not until their use in a criminal case that a violation of the Self–Incrimination Clause occurs.") (internal citation omitted). Harper has not alleged that any self-incriminating statements were used against her, and the charges were dismissed without trial. Thus, her right against self-incrimination was not violated. Furthermore, even if Harper could establish a *Miranda* violation, the Supreme Court held in *Vega v. Tekoh*, 597 U.S. 134 (2022), that the failure to give *Miranda* warnings cannot form the basis of a § 1983 claim, because *Miranda* warnings are merely prophylactic in nature and are not themselves required by the Constitution. Therefore, the undersigned **FINDS** that Harper's allegation that the arresting officers failed to give her *Miranda* warnings does

not state a claim for relief under § 1983.

Harper's only other allegation against the HPD officers—that they called her "an inappropriate four-letter word"—does not amount to a violation of her constitutional rights. *See Keyes v. City of Albany,* 594 F. Supp. 1147, 1155 (N.D.N.Y. 1984) ("[T]he use of vile and abusive language, no matter how abhorrent or reprehensible, cannot form the basis for a § 1983 claim."); *Patton v. Przybylski,* No. 85 C 10044, 1986 WL 6088, at *2 (N.D. Ill., May 15, 1986), *aff'd*, 822 F.2d 697 (7th Cir. 1987) ("Plaintiff's claim that he was verbally abused by various police officers who allegedly made derogatory and insulting racial comments does not rise to the level of a constitutional deprivation."). Further, Harper has not stated that any actions by the officers were the result of HPD policy or custom. Because Harper has not alleged a violation of her constitutional rights, let alone a violation stemming from a policy or custom of the HPD, the undersigned **FINDS** that her claims against the HPD must be dismissed.

### 3. Claims against Andrea McMullen

Harper also fails to state a claim against Defendant McMullen. Harper alleges that McMullen, a licensed social worker, examined Harper at the Prestera Center and asked Harper questions "that had zero relevance to [her] arrest, including a vehicle and loaded gun." (ECF No. 1 at 5). Harper has not alleged any facts suggesting that McMullen, an employee of a private mental health treatment facility, was acting under color of state law, as is required for suits under 42 U.S.C. § 1983. Private social workers and counselors generally do not qualify as state actors under § 1983. *Davis v. Willheim*, No. 17 CIV. 5793 (KPF), 2020 WL 1903982, at *6 (S.D.N.Y., Apr. 17, 2020). This also applies to private mental health professionals involved in involuntary commitment proceedings. *See Pino v. Higgs*, 75 F.3d 1461, 1466 (10th Cir. 1996) (quoting *Blum v. Yaretsky*, 457 U.S. 991,

11

1008 (1982)) ("[A] state is not responsible for decisions that 'ultimately turn on medical judgments made by private parties according to professional standards that are not established by the State.'"); *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992) (holding that a private hospital to which the plaintiff was involuntarily committed was not a state actor under § 1983); *Benn v. Universal Health Sys.*, Inc., 371 F.3d 165, 171 (3d Cir. 2004) (finding that private mental healthcare facility which applied for plaintiff's involuntary commitment was not a state actor); *Spencer v. Lee*, 864 F.2d 1376 (7th Cir. 1989), *cert. denied*, 494 U.S. 1016 (1990) (holding that private physicians acting pursuant to an Illinois involuntary commitment statute were not state actors for purposes of § 1983). Even assuming that McMullen was acting under color of state law, Harper has failed to allege that McMullen violated her constitutional rights. Harper does not provide, and the undersigned has not found, any legal authority suggesting that a counselor conducting a mental health examination violates a person's constitutional rights by asking them questions beyond the scope of the person's prior arrest. Therefore, the undersigned **FINDS** that Harper's claims against McMullen should be dismissed.

### 4. Claims against Magistrate and Circuit Courts of Cabell County and Western Regional Jail

The remaining Defendants named in Harper's complaint are not parties which can be sued under 42 U.S.C. § 1983. Section 1983 provides for a cause of action against "persons" acting under color of state law. Not all government entities are considered "persons" which can be sued under this statute. Municipalities and municipal officials are considered "persons" and can be sued under § 1983, *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978), but states, state agencies, and state officials sued in their official capacities cannot be sued, because suits against the state are barred by the

Eleventh Amendment. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66 (1989). Both this Court and the United States District Court for the Northern District of West Virginia have found that county magistrate and circuit courts in West Virginia are state entities which are not subject to suit under § 1983. *Green v. West Virginia*, No. 2:15-CV-02664, 2017 WL 6397645, at *5 (S.D.W. Va. Nov. 7, 2017), *report and recommendation adopted sub nom. Green v. West Virginia*, No. 2:15-CV-02664, 2017 WL 6390939 (S.D.W. Va. Dec. 13, 2017); *Shelton v. Crookshank*, No. 3:17-CV-108, 2017 WL 9565841, at *10 (N.D.W. Va. Nov. 17, 2017), *report and recommendation adopted*, No. 3:17-CV-108, 2018 WL 527423 (N.D.W. Va. Jan. 24, 2018), *aff'd as modified*, 742 F. App'x 782 (4th Cir. 2018); *Ellis v. Thornsbury*, No. 2:14-CV-24641, 2016 WL 3039961, at *12 (S.D.W. Va. May 27, 2016); *Bennett v. Min. Cnty. Cir. Ct. of Keyser*, WV, No. 5:11CV95, 2012 WL 1376989, at *2 (N.D.W. Va. Apr. 19, 2012); *Redman v. Jackson Cnty. Magistrate Ct.*, 2011 WL 6372339, at *1 (S.D.W. Va. Dec. 20, 2011). Additionally, Harper fails to make any explicit factual allegations against the Magistrate and Circuit Courts of Cabell County; she merely names the courts as defendants without mentioning them anywhere in the body of her complaint. (*See* ECF No. 1). Accordingly, the undersigned **FINDS** that Harper fails to state a claim against the courts, because they are not "persons" within the meaning of § 1983 and she has made no allegations against them.

Harper attempts to sue the Western Regional Jail, but the Jail is not a proper party. The Western Regional Jail is a building, not a legal entity capable of being sued. Harper also cannot maintain a cause of action against the legal entity which owns the building, the West Virginia Division of Corrections and Rehabilitation ("DCR"). Like the county magistrate and circuit courts, it is well-established that the DCR is an arm of the state and therefore not a person that can be sued under § 1983. *See Snyder v. Lakin Corr. Ctr.*, No.

3:18-CV-01021, 2019 WL 3543793, at *6 (S.D.W. Va. July 5, 2019), *report and recommendation adopted*, No. CV 3:18-1021, 2019 WL 3543686 (S.D.W. Va. Aug. 2, 2019). Therefore, the undersigned **FINDS** that the Western Regional Jail and the DCR are not proper parties under § 1983, and Harper's claims against them must be dismissed.

### IV. <u>Proposal and Recommendations</u>

For the reasons set forth above, the undersigned **DENIES** the Application to Proceed Without Prepayment of Fees and Costs, (ECF No. 3), and respectfully **RECOMMENDS** that the presiding District Judge **DISMISS** this case and **REMOVE** it from the docket of the Court.

Plaintiff is notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Plaintiff shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985). Copies of such objections shall be provided to Judge Chambers and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Plaintiff.

**FILED**:  April 17, 2024

_____
Cheryl A. Eifert
United States Magistrate Judge